539 So.2d 114 (1989)
STATE of Louisiana, Appellee,
v.
Raymond C. SANDERS, Appellant.
No. 20201-KA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
Rehearing Denied March 23, 1989.
*116 Culpepper, Teat & Avery, Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Charles B. Bice, Dist. Atty., Martin Smith Sanders, Asst. Dist. Atty., Winnfield, for appellee.
Before FRED W. JONES, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Raymond Sanders, was charged by bill of information with one count of distribution of marijuana and one count of distribution of cocaine, violations of LSA-R.S. 40:966 and 40:967. He was found guilty as charged after a trial by jury, and sentenced to concurrent terms of three years at hard labor on the marijuana conviction and six years at hard labor on the cocaine conviction. Defendant now appeals, raising 21 assignments of error. We affirm.

FACTS
Reginald Fields was commissioned with the Natchitoches Parish Sheriff's Office in 1984. However, for about three months in early 1987 he worked as an undercover agent in Winn Parish for the sheriff's office there. His responsibility in Winn Parish was to purchase drugs in an undercover capacity. He was assisted in his work by a Deputy Davies, who provided money for the purchases, and by State Trooper Stanley Martin, as well as various other law enforcement officials and private citizens. For the most part, the private citizens aided by identifying suspected drug dealers and providing the directions needed for Fields to travel in areas with which he was not familiar. Agent Fields testified that his primary concern, aside from protecting himself, was to obtain a clear, positive identification of the suspects with whom he transacted business. He was paid per diem plus expenses for his work.
On February 9, 1987, while working undercover in Winn Parish, Fields met the defendant on West Avenue in Winnfield at about 4:38 p.m. Both individuals were driving and brought their vehicles to a stop side by side, with the two drivers' windows immediately adjacent. While clearly viewing the defendant's face, Fields indicated he was looking for cocaine. When the defendant asked how much Fields wanted, he was told by Fields that $50 was all the money he had. Fields then observed the defendant produce a small plastic jewelry bag containing a white powdery substance. The substance was passed to Fields through the open car window, and Fields gave the defendant two $20 bills and a $10 bill. Immediately following the transaction, Fields recorded on a spiral notebook page the time, date, and location of the encounter. He also noted the individual from whom he had obtained the substance. The suspected contraband was wrapped securely inside the notepaper which, in turn, was placed in the glove compartment of Fields' vehicle. Later in the afternoon, the *117 packet was given to Deputy Davies and Trooper Martin.
On February 11, 1987, Fields was once again working in Winn Parish. At 3:38 p.m. he saw the defendant, whom he recognized from the transaction two days earlier in front of Sanders' Game Room. Fields left his vehicle and told the defendant that he was looking for "weed," a street term for marijuana. The defendant replied that he only had one joint, and its price was $3. Fields gave three $1 bills to the defendant, and a suspected marijuana cigarette was taken from the defendant's shirt pocket and handed to Fields.
After that encounter, Fields returned to his vehicle, and he once again wrote down the pertinent details of the exchange. The purchased cigarette was wrapped inside his note and, as was done previously, placed in the vehicle's glove compartment. Deputy Davies and Trooper Martin were given the evidence later in the afternoon.
Fields next saw the defendant on April 9, 1987, at the Winn Parish Sheriff's Office. Through a one-way mirror, he identified the defendant as the individual from whom he had made the two purchases. Fields also identified the defendant in open court.

Assignment of Error No. 1
In his first assignment of error, defendant contends the trial court erred in overruling his motion to quash the arrest and arrest warrant and to dismiss all charges.
At the preliminary examination, the state produced no evidence, and the trial court correctly released defendant from his bond obligation. However, because of the state's failure to establish probable cause, defendant maintains that his above mentioned motion should have been granted.
The state is under no duty to produce witnesses at a preliminary examination. State v. Sterling, 376 So.2d 103 (La.1979). If, from the evidence presented at the preliminary examination, it does not appear that there is probable cause to charge the defendant with the offense or with a lesser included offense, the court shall order his release from custody or bail. LSA-C.Cr.P. Art. 296. However, such action is not a judicial dismissal. The state may still proceed against the defendant. State v. Mayberry, 457 So.2d 880 (La.App. 3d Cir.1984), writ denied, 462 So.2d 191 (La.1984). Moreover, any issue concerning probable cause is moot after trial and conviction. State v. Mayberry, supra.
This assignment of error lacks merit.

Assignment Nos. 2, 3 and 4
In these assignments, defendant contends that several of his pre-trial motions were erroneously denied. He had requested that the counts be severed, that a change of venue be granted, and that the petit jury venire be quashed.
The record presented to this court contains defendant's motion to sever and the trial court's written denial of that motion. However, that ruling simply states that the reasons for the denial are the same as those stated in another case on the trial court's docket. Of course, the pertinent circumstances and reasoning underlying the denial of the motion in the other case cannot be determined from the record in the present case. Likewise, the minutes provide no further indication of the court's ruling, and no transcript of the hearing on the motion is included in the record.
The assignment concerning the motion for a change of venue is also insusceptible of evaluation. The record contains no such motion, and neither the minutes nor the remaining portions of the record contain any reference to it.
Similarly, the record contains defendant's motion to quash the petit jury venire, but there is no ruling by the trial court, either in the minutes or elsewhere. There also is no transcript of any hearing which may have been conducted on the motion.
For this appeal, defendant designated as necessary "the entire record in this matter, including all pleadings, all minutes entries, transcripts of all hearings held prior to trial, jury selection, opening statements, transcripts of testimony taken at trial, closing arguments and jury instructions." When the record was actually filed and the *118 possible deficiencies came to this court's attention, we ordered, on December 22, 1988, that counsel for the state and the defense show cause why the record should not be supplemented with the pertinent missing portions. No additions occurred, and, instead, defense counsel, by letter to the court, stated unequivocally that he and the defendant were satisfied with the record as filed.
We cannot determine whether defendant's initial designation of "the entire record ... including all ... hearings held prior to the trial" was intended to include, for instance, those reasons stated in the other case to which the trial court referred. Defendant's subsequent response to this court's order for clarification about the record clearly shows, however, his satisfaction with the record that was lodged here. Under these circumstances, the defendant having chosen not to avail himself of the opportunities and protections provided by both LSA-Const. Art. 1, § 19 (1974) and this court's order, we cannot speculate or find error because none has been demonstrated. We are able to review only that which is in the record. State v. Elliott, 467 So.2d 1144 (La.App. 2d Cir.1985). Having reviewed the contents of the record, which defendant has accepted as satisfactory, we must conclude the assignments are without merit.

Assignment of Error No. 5
Defendant asserts that the trial court erred in refusing to grant a mistrial when Reginald Fields referred to the substance acquired during one of the transactions as marijuana, rather than suspected marijuana.
In earlier testimony, Fields referred to the other item purchased from the defendant as cocaine. An objection was made, and, following a conference at the bench, he was asked to refer to the item as "suspected cocaine." Later, while testifying about the second purchase from defendant, Fields made the supposedly prejudicial remark. Another bench conference ensued, and a mistrial was requested and denied. Defendant did not request that the jury be admonished.
LSA-C.Cr.P. Art. 771 outlines the procedures and remedies when an improper statement is made by a witness. It provides for the jury to be admonished upon the request of the defendant or the state. The court may also grant a mistrial, on the defendant's motion, if it is not satisfied that an admonition can assure a fair trial.
A mistrial is a drastic remedy. Except in instances where mandatory, a mistrial is warranted only when substantial prejudice results to the accused, depriving him of a reasonable expectation of a fair trial. State v. Whitley, 296 So.2d 820 (La.1974). The determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. McLeland, 456 So.2d 633 (La.App. 2d Cir.1984), writ denied, 461 So.2d 312 (La.1984). Later in the trial, laboratory test results which identified the substances were admitted into evidence. Consequently, the remarks in question did not prejudice the defendant or cause him to be unable to obtain a fair trial. Denial of the motion was clearly within the trial judge's discretion.
This assignment of error lacks merit.

Assignment of Error No. 6
Defendant contends that his motion to strike the testimony of Reginald Fields, or, alternatively, for a mistrial, should have been granted because: 1) Fields stated that a confidential reliable informant was used in the case, and such an informant was not disclosed in the state's answer to the defendant's application for a bill of particulars; and 2) defendant had requested the initial police report and was only provided with one page, although Fields' testimony, it is asserted, indicated the initial report was two pages in length.
Defendant asserts that he specifically sought, in his application, information concerning the state's use of a confidential reliable informant. In responding to the application for particulars, the state indicated that no such informant was used. Testimony at trial disclosed that one Robert Rachal accompanied Fields during the *119 transactions for the purpose of showing the undercover agent around the area and identifying individuals suspected of drug dealings. Fields was unfamiliar with the geography of Winnfield.
Although during his testimony Fields referred to Rachal as "a confidential reliable informant," the trial court determined that Rachal was not such and that the state had not failed to appropriately answer the application of the defense.
However, even assuming Rachal to have been a confidential informant, the defendant still cannot prevail on this issue. Before an accused can force disclosure of an informant's identity, he must show exceptional circumstances pertaining to his defense, and identity should be disclosed only when the informer, cooperating with the police, participated in the crime. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). The defendant made no showing here of exceptional circumstances, and there are no indications the informant participated in the crime.
Much discretion is vested in the trial judge's determination of the question of disclosure. State v. Oliver, supra. Considering the foregoing principles, the trial judge's decision was an acceptable exercise of his discretion. In State v. White, 508 So.2d 982 (La.App. 3d Cir.1987), writ denied, 512 So.2d 1184 (La.1987), an informant introduced the defendant to law enforcement officers, rode with one officer and the defendant to get the marijuana, and was present at the illegal sale. Yet, the trial court's refusal to compel disclosure of the informant's identity was upheld.
The other portion of this assignment concerns additional writings, second pages, which defendant contends were part of the initial police report as to each incident and, hence, discoverable pursuant to his request. An initial police report, of course, is subject to discovery. LSA-R.S. 44:3A(4); State v. Shropshire, 471 So.2d 707 (La.1985). Also, the reporting officer may not selectively include information in the initial report, placing the remainder in a subsequent report, so as to defeat the purpose of the statute. State v. McEwen, 504 So.2d 817 (La.1987). The testimony shows, however, that the second documents or pages here were prepared subsequent to the initial report due to time pressures faced by the undercover agent.
Even assuming that the additional page should have been produced as part of the initial report, defendant's contentions are still unconvincing. The pages or reports at issue are not in the record. Nevertheless, trial testimony indicates that the second page basically restated the contents of the first page, which was provided to defendant. Since failure of the state to comply with discovery does not automatically require a reversal, this court must determine from the record whether any non-compliance caused the trier of fact to reach the wrong conclusion. State v. Booth, 448 So. 2d 1363 (La.App. 2d Cir.1984). Because the substance of the second page was already contained in the first page and because defendant made no factual allegations of prejudice, either at trial or in brief, his complaint is without substance.
This assignment is meritless.

Assignment of Error No. 7
In this assignment of error, defendant asserts that the trial court erred in not allowing defense counsel to question Reginald Fields about his failure to file 1984 and 1985 income tax returns.
The record reflects that Fields was asked whether he filed income tax returns for 1986 and 1985, and he answered those questions. He was then asked whether or not he even had the information with which to file income tax returns for 1984 and 1985. It was to this latter query that an objection was actually made. The state objected on the basis of relevancy, but defense counsel contended that the question concerned the witness's credibility.
Evidence of malfeasance in preparing income tax returns was not competent evidence with which to impeach credibility in this instance. See, State v. Romano, 320 So.2d 167 (La.1975). Furthermore, the *120 mere possession, or lack of possession, of information with which to file tax returns hardly seems to reflect one way or the other on credibility.
This assignment of error lacks merit.

Assignment of Error No. 8
Defendant contends that the trial court erred in permitting Reginald Fields to testify from information written on evidence labels, thereby admitting hearsay.
When Fields' testimony conveyed information from the labels on the bags containing the cocaine and marijuana he had purchased, no objection was made. Thus, any error may not now be raised since there was no contemporaneous objection. LSA-C.Cr.P. Art. 841.
In connection with his assignment of error, defendant cites only that portion of the transcript wherein Deputy Davies, not Fields, testified and related information shown on the labels. An objection was made to that testimony; however, the objection was not stated as being directed at hearsay.
Hearsay is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Hayes, 414 So.2d 717 (La.1982). Davies identified the handwriting on the labels as his own, but stated that all of the information reflected thereon was obtained from Fields. He further indicated that he had no personal knowledge as to the accuracy of that information. Thus, the witness plainly was not asserting the truth of the facts reflected on the labels, and the testimony does meet the definition of hearsay as now contended by defendant.
This assignment of error is without merit.

Assignment of Error No. 9
Defendant alleges that the trial court erred in allowing the verdict to be filed and recorded. The foreman of the jury indicated a vote sufficient to convict on each count, but less than unanimous. A subsequent polling of the jurors in the courtroom resulted in a unanimous vote to convict on both counts.
The verdict, signed and dated by the foreman, stated that ten jurors voted guilty as to Count 1 (distribution of cocaine) and that eleven voted guilty as to Count 2 (distribution of marijuana). Only ten jurors had to concur in a verdict. LSA-C.Cr. P. Art. 782. No doubt existed, then, that the requisite number of jurors found the defendant guilty. A trial court cannot refuse to accept a verdict which is proper in form, meets procedural requirements and is responsive to the indictment. State v. Cox, 450 So.2d 1073 (La.App. 1st Cir.1984).
Defendant apparently feels that the unanimous vote which resulted from the poll indicated confusion and uncertainty on the part of the jurors. Defendant's concerns be as they may, the trial court's action was not only proper, but mandatory. LSA-C.Cr.P. Art. 812 provides that if "upon polling all of the jurors, the number of jurors required by law to find a verdict answer `Yes,' the court shall order the clerk to record the verdict and the jury shall be discharged." (Emphasis added.) LSA-C.Cr.P. Art. 5 states that the word "shall" is mandatory. Since the poll produced more than the legally required number of votes to render a verdict, the trial court appropriately followed the mandate of the law by ordering that the verdict be recorded and the jury discharged. See State v. Felton, 339 So.2d 797 (La.1976).
This assignment lacks merit.

Assignments of Error 10-17
Defendant contends that the trial court erred in refusing to allow defense counsel, during the hearing on a motion for a new trial, to question jurors concerning their conduct during deliberations and voting. More specifically, the court refused to allow the jury foreman to be asked whether the jurors voted secretly or orally. Also, no inquiry was allowed concerning the count of the last vote taken in the jury room. Likewise, juror Charles Hall was not permitted to answer questions *121 related to his vote on the jury's last ballot, his understanding of the polling of the jury, and his voting consistency between the jury room and open court. Finally, defense counsel was not permitted to interrogate juror Clementine Coleman about whether she slept in the jury room during deliberations. She also was not allowed to state whether a fellow juror admonished her to "wake up and vote guilty so we can go home."
LSA-R.S. 15:470 provides the following:
No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member.
The prohibition contained in the foregoing statute is intended to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. State v. Morris, 457 So.2d 119 (La.App. 2d Cir. 1984), and cases cited therein. Only well pleaded allegations of prejudicial juror misconduct violating a defendant's constitutional rights will require an evidentiary hearing at which jurors shall testify. State v. Graham, 422 So.2d 123 (La.1982); Morris, supra. Under the provisions of LSA-R.S. 15:470, unless such pleadings are made with particularity, jury members are not competent to testify. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984).
Defendant's motion contains no well pleaded allegations of juror misconduct. Rather, it simply states that "defendant alleges substantial jury misconduct in this matter." The motion also alleges, with no elaboration, that juror Charles Hall voted not guilty on both counts in the jury room. Similarly, it is blandly asserted that juror Dianne Holden "will testify that she voted not guilty on Count 1." Additionally, it is alleged that some jurors would have voted differently but were influenced by defendant's failure to testify. Finally, defendant asserts "upon information and belief" that juror Clementine Coleman "slept through jury deliberations until someone told her to wake up and vote guilty so she could go home and go to bed."
Although the allegations made concerning Ms. Coleman are somewhat more specific than the other general assertions advanced by defendant, there are nevertheless no facts pleaded which indicate that she was unwillingly induced to vote guilty. Thus, none of the complaints put forth by the defendant allege juror misconduct with particularly sufficient to require members of the jury to testify. Consequently, the trial court was correct in sustaining objections to the questions which are the subject of this assignment. State v. Morris, supra.
These assignments are meritless.

Assignment of Error No. 18
Defendant contends that the trial court erred in failing to grant his motion for a post-verdict judgment of acquittal. He seemingly alleges that the state failed to prove the essential elements of the crime.
A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in the light most favorable to the state, does not reasonably permit a finding of guilty. LSA-C.Cr.P. Art. 821(B). In the case sub judice, the trier of fact was provided with sufficient evidence to legally convict the defendant. In his testimony, Reginald Fields positively identified defendant as the individual with whom he engaged in illegal drug transactions on February 9, 1987, and February 11, 1987. Fields described events from the notes taken at the time of the transactions. Also, laboratory evaluations identified the substances procured during those encounters as cocaine and marijuana. Further, the chain of custody, as well as the labeling of the substances, was established. Such evidence quite clearly and adequately supports a conviction.
This assignment is meritless.

*122 Assignments of Error Nos. 19 and 20

Defendant contends his motions for new trial and in arrest of judgment should have been granted.
At the hearing of these motions, the only witnesses were produced solely to attack the verdict and deliberations of the jury, issues which have been previously addressed. Neither witnesses nor argument was offered in support of the motions' conclusory allegations, the only contentions not heretofore treated.
These assignments are meritless.

Assignment of Error No. 21
By this assignment of error, defendant contends that the trial court erred in imposing an excessive sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C. Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
In this case, the reasons given by the trial judge for the defendant's sentence demonstrate an adequate compliance with LSA-C.Cr.P. Art. 894.1. The trial court noted that the defendant was 35 years old at the time of the offense and 36 at the time of the sentencing. Also, defendant was married and he had two children. Defendant was self-employed as the owner of some boarding houses.
The criminal record of the defendant revealed a substantial number of arrests, all of which involved misdemeanors. In many instances, the offenses involved the operations of defendant's business, and no prosecution was pursued. In 1985, the defendant was convicted for failure to allow inspection of his Game Room. In 1986, defendant was convicted for consumption and possession of controlled dangerous substances, possibly simple possession. Also in 1986, the defendant pleaded no contest to the offenses of failure to have an alcohol beverage card and displaying alcoholic beverages in public. Some traffic convictions also were noted by the trial court. The trial court stated that no excuse existed for the defendant's conduct and no indication existed that the defendant would respond favorably to probation. Because the offenses occurred on two separate days, the trial court noted some form of repetitiveness in the defendant's conduct.
Under the second prong of the test, the reviewing court must determine whether the sentence imposed is too severe given the circumstances surrounding the criminal conduct and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of that discretion. State v. Square, 433 So.2d 104 (La.1983).
Considering the reasons articulated by the trial judge for the sentence imposed, the defendant's sentence is not so disproportionate as to shock our sense of justice, even though the defendant was a first felony offender.
This assignment lacks merit.

*123 Conclusion

For the foregoing reasons, all of defendant's assignments of error are meritless, and his conviction and sentence are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, NORRIS, HIGHTOWER, HALL and LINDSAY, JJ.
Rehearing denied.