MICHAEL E. KIRBY, Judge.
 

 |TThe State charged Darnell A. Lewis with one count of simple burglary of an inhabited dwelling, and one count of possession of a stolen automobile. He pled not guilty at his arraignment. The trial court found probable cause to substantiate the charges and denied the defendant’s motions to suppress the evidence, identification and statement at a subsequent motion hearing. On the date of trial the State amended count two of the bill of information from possession of a stolen automobile to unauthorized use a movable. A six-member jury found Mr. Lewis not guilty of simple burglary but guilty of unauthorized use of a movable. The trial court sentenced him to six years with credit for time served.
 

 Mr. Lewis appeals his conviction asserting three assignments of error: that he was denied access to possible impeachment evidence when the trial court did not allow him to call a witness at the preliminary examination; that the trial court erred by permitting an untimely amendment of the bill of information to charge a new offense against him; and, that the evidence adduced at trial was insufficient to sustain a conviction for unauthorized use of a moveable.
 

 |2We affirm his conviction. The purpose of the preliminary examination is to determine whether probable cause exists to charge a defendant with the crime for which he has been arrested or with a lesser and included one-not to ascertain the existence of impeachment evidence for the trial. Our review of the record and the applicable law shows the prosecution timely amended the bill of information and that there was sufficient evidence introduced at trial to support the jury’s verdict. We have also conducted an independent review of the record for errors patent and found none. Our reasons follow.
 

 
 *551
 

 TESTIMONY
 

 On August 19, 2007, Ms. Lisa Marie Gaines, arrived home from work, and discovered that a window in the back of her house was broken. Ms. Gaines and her children checked the house but did not notice anything missing. She called the police, who came to make a report of the incident. The next morning, Ms. Gaines discovered that her purse was missing and her car was not in her driveway. Again, Ms. Gaines called the police. She and the police searched the outside area of the house. They found her purse in the backyard, with the contents scattered about, but Ms. Gaines’ car keys and money were missing. Later that afternoon she found her car parked one street over behind her house. The keys were on the dashboard. She called the police once again. The police responded, took pictures, checked the interior of her house, tested for fingerprints and interviewed her and her two children. A few minutes into the investigation, one of Ms. Gaines’ children alerted her and the investigators that someone was driving her car away. Ms. Gaines and the officers observed the defendant driving away in the subject’s car. Some of the officers followed the vehicle, called for backup and reported a | .^description of the suspect. Ms. Gaines did not know the defendant nor did she give him permission to drive her vehicle.
 

 The following day Officer Jennifer Du-pree conducted a follow-up investigation. Ms. Gaines recounted to Officer Dupree the incidents of the previous night, the broken window and the discovery that her purse and car were missing. As the officer spoke with Ms. Gaines, the women noticed Ms. Gaines’ car parked in a driveway next to and behind the Gaines residence. Ms. Gaines identified the vehicle as hers. Officer Dupree called the crime lab to conduct forensic tests. Ms. Gaines and the officer were standing in front of Ms. Gaines’ house when Ms. Gaines’ niece alerted them that someone was driving away in the vehicle. Office Dupree and her partner, Det. Mayfield, unsuccessfully attempted to stop the car on foot. Both officers clearly saw the defendant’s face as he drove Ms. Gaines’ vehicle. With the assistance of Officers Wilbert Williams and Dave Bennett and other units in the area, Officer Dupree and Det. Mayfield pursued the defendant in their police units, ultimately cornering him in a fenced backyard in the neighborhood. The defendant had abandoned the Gaines’ vehicle in a driveway nearby.
 

 The officers read Mr. Lewis his
 
 Miranda
 
 rights. He told them he knew nothing about a stolen vehicle and was just in the neighborhood stealing copper. Crime lab personnel found no damage to Ms. Gaines’ vehicle such as broken windows or damage to the steering column. Although the Officers retrieved three keys and a cell phone from the defendant, the keys to Ms. Gaines’ vehicle were not recovered. Officer Dupree identified the defendant in court as the man she saw drive away in Ms. Gaines’ vehicle. Under cross-examination, Officer Dupree |4reported the description of the suspect as a black male wearing a red and black skull cap.
 

 Detective Tony Mayfield investigated this case with Officer Dupree. He corroborated the circumstances of the defendant’s apprehension and arrest. After the defendant was
 
 Mirandized,
 
 he began yelling that he was in the neighborhood just stealing copper. The defendant further stated that he did not steal the Gaines’ vehicle because he would have had to break into the house to steal the keys to the vehicle.
 

 Officer David Bennett responded to Officer Dupree’s call for assistance in apprehending a suspect driving a stolen vehicle.
 
 *552
 
 He arrived after officers had cordoned off the area where the defendant abandoned the Gaines’ vehicle and fled on foot into a fenced backyard. Officer Bennett apprehended the defendant. The officer identified the defendant in court as the man he arrested in this incident.
 

 ASSIGNMENT OF ERROR NUMBER 1—PRELIMINARY EXAMINATION WITNESS
 

 Here, the defendant claims the trial court erred by not allowing him to call a witness at the preliminary hearing, thereby hampering his defense. He complains that he was denied possible impeachment material because he was not allowed to call Officer Williams.
 

 While a preliminary examination can act as a discovery technique, the law does not treat it as such. The primary function of a preliminary examination is to determine whether probable cause exists to hold the defendant for the charged | offense or a lesser included one.
 
 State v. Mayberry,
 
 457 So.2d 880 (La.App. 3 Cir. 10/10/84).
 
 [1]
 

 The State need only present a pri-ma facie case. If the evidence does not support probable cause, the court must order the defendant’s release from custody or bail. This is not a judicial dismissal of the case and the State may still proceed against the defendant. As noted in
 
 State v. Sterling,
 
 376 So.2d 103 (La.1979):
 

 [A] preliminary examination does not determine the validity of the charge brought against a defendant, but rather determines whether or nor there is probable cause to deprive the defendant of his liberty. See
 
 State v. Jenkins,
 
 338 So.2d 276 (La.1976).
 

 Id.,
 
 376 So.2d at 104.
 

 A conviction renders moot any claim of an improper denial of a preliminary examination.
 
 State v. Jackson,
 
 2001-1268 (La.App. 4 Cir. 2/6/02), 809 So.2d 1127 citing
 
 State v. Washington,
 
 363 So.2d 509 (La.1978) and
 
 State v. Mayberry,
 
 457 So.2d 880 (La.App. 3 Cir.1984).
 

 Pretrial motions were held on three separate dates, having been held open twice for additional testimony on suppression motions and probable cause. Detective Mayfield and Officers Dupree and Bennett each testified as to their role in the investigation of this case and the defendant’s arrest. The defendant cross examined each of the witnesses on the probable cause for his arrest. Once the State proved probable cause for the defendant’s arrest, the purpose of the [¿preliminary hearing was satisfied. The preliminary hearing is not held to allow the defense to present its theory of the case, but rather for purposes of determining probable cause for the charged offense or a lesser included offense.
 
 Mayberry, supra.
 

 As to Mr. Lewis’ claim he was denied an opportunity to elicit
 
 Brady
 
 and/or impeachment material from Officer Williams, a preliminary hearing does not abrogate or stand in the place of discovery articles, La. C. Cr. P. arts. 716,
 
 et seq.
 
 These discovery statutes impose upon the State a continuing obligation to disclose exculpatory information to the defendant. The prelim
 
 *553
 
 inary hearing is not the source for such disclosure, nor does it trigger the State’s obligation.
 

 Even if there had been a problem with the preliminary hearing, which there was not, the problem would have been rendered moot by the defendant’s conviction. This assignment is without merit.
 

 ASSIGNMENT OF ERROR NUMBER 2—TIMELINESS OF AMENDMENT OF BILL OF INFORMATION
 

 Mr. Lewis next argues that the trial court erred by allowing the State to amend count two of the Bill of Information from possession of a stolen vehicle to unauthorized use of a moveable. He contends the change was made after trial began and that he was prejudiced by the change.
 

 Since every accused has the right to be informed of the nature and cause of the accusation against him, La. Const. 1974 Art. I, Section 13, and since he or she is entitled to confront and cross-examine the witness against him or her, La. Const. 1974 Art. I, Section 16, the bill of information must provide sufficient detail to allow the defendant to prepare for trial and to permit the court to rule on the ^admissibility of evidence.
 
 State v. Marcal,
 
 388 So.2d 656 (La.1980);
 
 State v. Meunier,
 
 354 So.2d 535 (La.1978). Thus, in
 
 State v. Johnson,
 
 93-0394, p. 3 (La.6/3/94), 637 So.2d 1033, 1034-1035 (per curiam) the Court held:
 

 Accordingly, the state may not substantially amend the bill of information to charge a new offense once trial has begun. [citation omitted].
 

 The substance of an indictment may be amended before trial begins. La. C. Cr. P. art. 487. In a jury trial, trial begins when the first prospective juror is called for examination. La. C. Cr. P. art. 761. The defendant bears the burden of proving that he has been prejudiced by the amendment.
 
 State v. Spears,
 
 39,302 (La.App. 2 Cir. 9/27/06), 940 So.2d 135,
 
 cert. den., Spears v. Louisiana,
 
 - U.S. -, 128 S.Ct. 1888, 170 L.Ed.2d 747, 76 USLW 3444 (2008).
 

 Mr. Lewis’ claim that the bill of information was amended after trial began is wrong. The transcript of the trial shows that the amendment occurred prior to the beginning of trial and prior to the arrival of the prospective jurors. Although the defendant claims he was prejudiced by the “last minute” amendment, he does not specify how he was prejudiced. He cannot claim surprise. La. R.S. 14:68.4 defines the offense of unauthorized use of a motor vehicle as “the intentional taking or use of a motor vehicle which belongs to another ... without the other’s consent....” The amendment did not introduce new evidence, or allege a new crime for which the defendant was unaware. The defendant knew from the time of his arrest that theft of a vehicle was the central issue. The amendment did not change the fact that the police chased Ms. Gaines’ vehicle and found it in close proximity to the defendant. Nothing changed the fact that the defendant was charged with using a vehicle which did not belong to him. The victim’s testimony at the preliminary hearing did not change at trial. She stated on both occasions that she 18did not know the defendant and did not give him permission to use her vehicle. This same testimony was elicited by the defense during motions hearings. Accordingly, there was no surprise to the defendant for the amended charge of unauthorized use of a vehicle. Nor has the defendant shown any prejudice by the amendment. This assignment has no merit.
 

 ASSIGNMENT OF ERROR NUMBER 3—SUFFICIENCY OF THE EVIDENCE
 

 The defendant argues that the evidence is insufficient to support his convic
 
 *554
 
 tion. He maintains that the on-site identifications by Detective Mayfield and Officer Dupree are not sufficient evidence of his guilt because no one actually saw him enter or exit the stolen vehicle.
 

 The standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole, not just the evidence favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict will be upheld.
 
 State v. Mussall,
 
 523 So.2d 1305, 1310 (La.1988).
 

 Either direct or circumstantial evidence may prove the essential elements of the crime. With circumstantial evidence the rule is: “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. This rule is not a separate test from the review standard established by
 
 Jackson v. Virginia,
 
 but rather it is an ^evidentiary guideline which facilitates appellate review of the sufficiency of the evidence.
 
 State v. Jacobs,
 
 504 So.2d 817, 820 (La.1987). Ultimately, to support a conviction, the evidence, whether direct or circumstantial or both, must be sufficient under Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983). Credibility determinations are within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence.
 
 State v. Vessell,
 
 450 So.2d 938, 943 (La.1984).
 

 Detective Mayfield and Officer Dupree both testified that they recognized the defendant as the man driving the victim’s vehicle. Officer Dupree said that she was about four feet from the defendant and looked straight into his face as he sped past the officers in the victim’s vehicle. Detective Mayfield was standing next to Officer Dupree as the defendant fled in the victim’s vehicle. Like Officer Dupree, Detective Mayfield looked directly at the defendant and was absolutely certain the defendant was the man he saw flee from officers in the victim’s vehicle. The detectives testified that the man they saw driving the victim’s vehicle and the man officers apprehended in the fenced backyard of a neighborhood house were one and the same, the defendant. The jury chose to credit the police officers’ testimony. Based upon the evidence, it was not unreasonable for the jury to find the defendant guilty of the unauthorized use of the victim’s vehicle. This assignment is without merit.
 

 ERRORS PATENT
 

 A review for errors patent on the face of the record reveals none.
 

 Accordingly, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . La. C. Cr. P. Art. 296 provides:
 

 If the defendant has not been indicted by a grand jury for the offense charged, the court shall, at the preliminary examination, order his release from custody or bail if, from the evidence adduced, it appears that there is not probable cause to charge him with the offense or with a lesser included offense. If the defendant is ordered held upon a finding of probable cause, the court shall fix his bail if he is entitled to bail.
 

 After an indictment has been found by a grand jury, the preliminary examination shall be limited to the perpetuation of testimony and the fixing of bail.